### Peter Ingersoll v. Henry W. Horton.

Where the owner of land permitted a person to occupy and improve the same for a number of years, under a verbal contract of purchase, and under the impression that he might pay for it when demanded, and the purchaser offered to pay when notified to do so, — *Held* that there was no such *laches* imputable to the purchaser as should debar him from the specific performance of the contract.

A notice served by the owner, in such a case, requiring the purchaser to pay for the land in a specified time, and take a deed therefor, estops him from taking advantage of *laches* of the purchaser prior to such notice.

*Heard October 25th. Decided November 15th.*

Appeal by defendant from the Oakland Circuit in chancery.

The bill was filed February 14th, 1854, to compel the specific performance of a parol contract for the conveyance of some six or seven acres of land, which, complain-

ant alleges, he bargained for to give him access to the Saginaw turnpike from a forty acre lot he was about to purchase in the rear.

The bill alleged the contract to have been made in 1836, on the terms that he was to take possession of and occupy the lands, and pay therefor one dollar and twenty-five cents per acre, whenever convenient: That he did take possession accordingly, build a log house, and make some other improvements thereon, and that the place is now worth $1,000: That he has, at all times, been ready to pay the price when called for: That on September 7th, 1853, defendant served upon him a written demand of payment, and that complainant thereupon caused the premises to be surveyed out, and the quantity of land ascertained, and then tendered thirty dollars in payment, which defendant refused to receive, though it was more than was due.

The answer admitted the contract to convey the land to complainant, but alleges that it was on the terms that complainant should put up a house and keep tavern upon it, keep the taxes paid, and pay for the land immediately on his return from Detroit, to which he was then going to purchase an adjoining lot: That complainant had not performed on his part, in any particular, and defendant had paid the taxes on the premises the most of the time.

The case was heard by the court below on pleadings and proofs, and specific performance decreed. The view taken by this court of the evidence, will appear from the opinion.

The following is a copy of the notice served on complainant by defendant:

"PETER INGERSOLL — *Sir:* — You are hereby notified that you must, within fifteen days from this date, pay me for the land which you now occupy, on the west half of southwest quarter of section seven, in town five north of range eight east, in the county of Oakland, and take a deed therefor — the said land belonging to me — or you must

leave the premises. I am not willing that the said land shall be occupied any longer without being paid for the same.

September 7, 1853. HENRY W. HORTON."

*M. Wisner* and *C. Draper*, for complainant.

*M. L. Drake*, for defendant.

MARTIN Ch. J.:

The contract between the parties in this case evidently was, that Horton should sell the land in question to Ingersoll for the government price, with interest from the time of Horton's purchase. The defendant alleges in his answer, and attempts to prove, that the bargain embraced more than this, viz.: the payment of taxes, and the keeping a tavern thereon. But while all the testimony agrees that the price to be paid was ten shillings per acre, with interest, it fails to show any further, or other agreement, and the facts which surround the case repel the presumption that any such contract as the defendant now claims to have been made, was made. Horton's object was to secure settlers in the neighborhood, and Ingersoll's was to have access to the Saginaw turnpike if he could purchase the forty acre lot lying back of this fraction; and his contract with Horton was contingent upon said purchase. This was in 1836, and Ingersoll, having made the purchase of the forty acre lot, entered shortly after into possession of the land in question, and has since occupied it. This land appears to have been in the immediate vicinity of Horton's residence, and he seems to have had actual knowledge, from the first, of Ingersoll's possession. Ingersoll erected a log house and out-houses, and Horton assisted him. He has set out an orchard, and made other improvements, with Horton's knowledge, and it is hardly consistent to suppose that, if the keeping of a tavern entered into the consideration of Horton's sale, that he would

silently have permitted Ingersoll's possession without complaint, in this particular, until this litigation. Nor is there anything in the case to warrant the inference that the payment of taxes entered into the . contract. There is no testimony to show that any taxes were paid by Horton, and the evident expectation of the parties in making the contract was, that Ingersoll's purchase would be made immediately after he acquired the forty acres. There was then no occasion for contracting respecting taxes, unless some had been paid before the contract; and Horton has made no proof of any such. The testimony of Drake and Downey, and the written demand of September 7th, 1853, repel any presumption that either the payment of taxes or the keeping a tavern were parts of the contract. The demand testified to by Drake, and the written demand, were for payment generally; while in the interview in Downey's presence, Horton did not pretend, nor claim, that keeping a tavern, or the payment of taxes, were a part of the contract, but only that he ought to have the taxes unpaid — probably in consequence of Ingersoll's delay.

The sum of thirty dollars, tendered by Ingersoll, was sufficient, and more than sufficient, to pay for the land at the contract price, with interest; and as we have no proof that taxes were paid, or their amount, that subject must be excluded from consideration.

We think, therefore, that the contract set out in the bill is substantially proven, and that the facts of the case, and particularly the long possession of the land, and its improvement by Ingersoll, with Horton's acquiescence, entitles the complainant to the relief asked.

And we think this to be a case which very properly calls for the interference of equity. The whole case shows that Horton permitted Ingersoll to occupy and improve the land, under the impression that he might pay for it when demanded, or if not so, at least that he held it under the contract. Horton himself actually regarded such

to be the fact (for in 1853 he demanded of him payment for the land, or a surrendry of the possession). Immediately after such demand, Ingersoll tendered to him thirty dollars in money, and presented a deed of the land for execution. This occurred, according to the testimony of Downey, within less than a week after Horton's demand of payment. We have found the contract to be as complainant charges, and also that the tender was sufficient to cover it; and it follows that such tender was, in law, a payment of the purchase price, a full performance on Ingersoll's part; and we must hold that it would be a gross fraud, under all the circumstances of this case, in Horton to refuse to convey.

Nor do we think that *laches*, sufficient to bar the relief, are imputable to the complainant in this case. The occupancy, by the complainant, of the land, without performing his contract, appears to have been by sufferance — Horton making no objection, nor demanding the contract price. No demand or refusal is shown, and when the demand of September 7th, 1853, was made, it was immediately responded to. Although, as claimed by the defendant's counsel, the party seeking performance of a contract must show that he has not been in fault, but has taken all proper steps towards performance on his part, and has been desirous, ready, and prompt to perform, yet the demand of September 7th estops the defendant from alleging a want of promptness before that time, and the promptness of the complainant afterwards satisfies the law.

The decree of the court below must be affirmed with costs.

CHRISTIANCY and CAMPBELL JJ. concurred.

MANNING J. did not sit, having been of counsel.